**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **DAVID GORDON OPPENHEIMER,** | ) | **Case No.** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RANDAL WADE THOMPSON; and** | ) | |
| **VISTA-GRAPHICS, INC.** | ) | |
| | | |
| **Defendants.** | | |

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff"), for his complaint against Defendants, Randal Wade Thompson ("Thompson"), Vista-Graphics, Inc. ("Vista Graphics") (collectively, "Defendants") alleges:

### JURISDICTION/VENUE

1.      Plaintiff's claims arise under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act.).

2.      Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 & 1338 because it involves federal questions arising out of the Copyright Act. The Court has personal jurisdiction over the defendants because they reside in this district.  Venue in this judicial district is proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c).

### THE PARTIES

3.      Oppenheimer is a citizen of North Carolina engaged in the business of professional photography.  He resides in and has a principal place of business in Asheville, Buncombe County, North Carolina.

4.      Thompson is an individual citizen residing at 1548 Mill Landing Road, Virginia Beach, VA 23457. Upon information and belief, Thompson is the owner, manager, president, publisher, and/or other genre of principal of Vista Graphics.

5.      Vista Graphics is a Virginia corporation with its principal place of business located at 1264 Perimeter Parkway., Virginia Beach, VA 23454.

## INTRODUCTORY FACTS

6.      Plaintiff is a professional photographer who makes his photographic works available for print sales and licensing online at his website https://www.performanceimpressions.com.

7.      Plaintiff is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all rights, titles, and interest to the copyrights of the original photograph at issue in this matter. (The "Work"). (**Exhibit 1.**)

8.      Plaintiff has complied in all respects with Title 17, U.S.C. § 102, *et seq.,* and all other laws governing federal copyright applicable to the Work. On March 6, 2015, Plaintiff deposited and registered the Work with the U.S. Copyright Office, Registration No. VAu 1-203-961. (**Exhibit 2.**) Plaintiff's copyright in the above-described Work are presently valid and subsisting, were valid and subsisting from the moment of the Work's creation, and all conditions precedent to the filing of this suit have occurred.

9.      For many years, it has been Plaintiff's custom and business practice to display his copyright management information (hereinafter, "CMI") on his copyrighted photographs when they are first published by him, and thereafter. When published by Plaintiff, the Work at issue in this case prominently displayed his CMI with a facial watermark, embedded in the metadata, and in an adjacent caption of the Work. Thus, Defendants were on notice that the Work was copyright-protected.

10.     Fewer than three years before this filing, Plaintiff discovered that one or more of the Defendants, or someone acting at their direction and on their behalf, infringed his copyrights by – without authorization or license from Plaintiff – reproducing, distributing, and publicly displaying (or directing others to do so) the Work on their website tennesseesmokies.guide/sites/default/files/photos/ts-harrahs-cherokee-casino-hero.jpg to advertise and market the Harrah's Cherokee Valley River Casino & Hotel and Defendants' business in general. (**Exhibit 3**.)

11.     Upon information and belief, Thompson and/or Vista Graphics (or someone acting at their direction and on their behalf) created the infringing website to advertise and market the Harrah's Cherokee Valley River Casino & Hotel and Defendants' business in general. (**Exhibit 4**.)

12.     Upon further information and belief, one or more of the Defendants, or someone working at their direction and on their behalf, located and accessed the Work through Plaintiff's website, or through a Google image search. They then reproduced (scraped) and incorporated the Work – with Plaintiff's CMI removed – and false CMI added[1] –then distributed (uploaded) and publicly displayed on the website tennesseesmokies.guide all without license or authorization from Plaintiff.

13.     Defendants unauthorized reproductions, distribution, and public display of the Work constitutes copyright infringement.

14.     Defendants' actions removing the Work's CMI, providing false CMI, and/or distribution of the Work with Plaintiff's CMI removed, and with false CMI added are in violation of the Digital Millennium Copyright Act ("DMCA").

---

[1] Both by placing the logo "Harrah's Cherokee Valley River Casino & Hotel" on the face of the infringing Work and by including "*Copyright @ 2016 Virginia Beach Visitor Co. Guide Designed by VistaGraphic's, Inc. All rights reserved*" at the bottom of the website.

15.     On or about September 18, 2020, Plaintiff sent Defendants notice of their infringement of the copyrighted Work and violation of the DMCA and requested information about the nature and extent of their infringing activities.  (**Exhibit 4.**)

16.     Thereafter, Plaintiff's attorney sent numerous communications attempting to negotiate a settlement, however, Defendants appeared uninterested in resolving this matter through such means.  Suit has therefore become Plaintiff's last resort to hold the Defendants accountable for their unlawful activities.

## COUNT I – NON-WILLFUL COPYRIGHT INFRINGEMENT

17.     Plaintiff re-alleges and incorporates paragraphs 1 – 16 as if fully restated herein.

18.     Plaintiff owns valid copyright in the Work.

19.     Plaintiff registered the Work with the Register of Copyrights pursuant to 17 US.C. § 411(a).

20.     Plaintiff is currently and at all relevant times has been the sole owner of all rights, title, and interest in and to the copyright of the Work.

21.     At no time has Plaintiff authorized Defendants to reproduce, distribute, prepare derivative works, or publicly display the Work or any portion thereof.

22.     Defendants infringed Oppenheimer's copyright in and to the Work by copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of the Work within the United States in violation of 17 USC §101 *et seq.*

23.     Upon information and belief, Defendants have benefitted from their infringements of the Work, while Plaintiff has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and dilution in the marketplace.  Plaintiff therefore is entitled to injunctive relief, damages, and other relief set forth in the Act.

## COUNT II – RECKLESS OR WILLFUL COPYRIGHT INFRINGEMENT

24.     Plaintiff re-alleges and incorporates paragraphs 1 – 16 as if fully restated herein.

25.     Alternatively, Defendants recklessly or willfully infringed Plaintiff's copyright in and to the Work shown on Exhibit 1 to this Complaint by scanning, copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of said photograph within the United States in violation of Title 17 USC §101 *et seq.*

26.     Because Plaintiff's Work at issue in this case, when published, prominently displayed his CMI on its face with a watermark, in adjacent captions, as well as embedded in the metadata of the Work, Defendants were on notice that the Work was copyright-protected, yet they infringed it anyway.

27.     Upon information and belief, one or more of the Defendants, or a third party acting on their behalf, saw Plaintiff's CMI on the face of the Work, in the adjacent captions, and/or in the embedded metadata of the Work prior to reproducing (scraping) it from the World Wide Web.

28.     Therefore, because they had the opportunity to appreciate that Plaintiff was the sole author and owner of the Work, and still used it without license or authorization, the Defendants have recklessly/willfully infringed the Work.

29.     Upon information and belief, Defendants have benefitted from their infringements of the Work, while Plaintiff has suffered and will continue to suffer monetary damages, irreparable injury to his business, harm of reputation and goodwill, and dilution of the Work in the marketplace; therefore, Oppenheimer is entitled to injunctive relief, damages, other relief set forth in the Act.

## COUNT III – VICARIOUS COPYRIGHT INFRINGEMENT

30.     Plaintiff re-alleges and incorporates paragraphs 1 – 16 hereinabove as if recited *verbatim*.

31.     Pleading further but without waiver of the foregoing, upon information and belief, at the time the infringing acts were performed, Thompson was the owner, manager, president, publisher and/or another genre of principal of Vista Graphics.

32.     Upon information and belief, Thompson controlled most decisions of Vista Graphics and was the dominant influence in the company. Thompson provided hands-on decision making with respect to the activities of Vista Graphics, making most if not all of the decisions. Thompson therefore had the right and ability to supervise and/or control the infringing conduct of Vista Graphics, and/or to stop the infringements once they began.

33.     Upon information and belief, as the owner, manager, president, publisher, and/or other principal, Thompson had obvious and direct financial interests in the infringing activities of Vista Graphics.

34.     Thompson therefore is vicariously liable for the infringing activities of Vista Graphics.

## COUNT IV – CONTRIBUTORY COPYRIGHT INFRINGEMENT

35.     Oppenheimer re-alleges and incorporates paragraphs 1 – 16 as if fully restated herein.

36.     Alternatively, upon information and belief, Thompson has caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements and/or he refused to exercise his right and/or ability to stop the infringement(s) after they began.

37.     On information and belief, Thompson controlled most decisions of Vista Graphics and was the dominant influence in the company. Thompson provided hands-on decision making

with respect to the activities of Vista Graphics, making most if not all of the decisions, set and controlled the company' policies and protocols, and established company rules and cultures which appear to have allowed or even encouraged the infringing activities.

38.    Upon information and belief, Thompson had the right and ability to supervise and/or control the infringing conduct of Vista Graphics, and/or to stop the infringements once they began, but either refused to exercise such rights, or chose to remain blind to the infringing activities, all while maintaining a work environment that allowed them.

39.    Upon information and belief, as the owner, manager, president, publisher, and/or other principal, Thompson had obvious and direct financial interests in the infringing activities of Vista Graphics.

40.    Thompson therefore is personally liable to Plaintiff as a contributory infringer to the infringing activities of Vista Graphics.

### COUNT V - DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS

41.    Oppenheimer re-alleges and incorporates paragraphs 1 – 16 as if fully restated herein.

42.    As is his pattern and practice, Oppenheimer had clearly marked the Work with notices of copyright and additional CMI — including with a legible facial watermark, in an adjacent caption, and/or embedded in the Work's metadata — including a "©" notice of copyright, stating that all rights are reserved, licensing instructions, Plaintiff's address, phone number, email, and website URL. Plaintiff does this to distinguish his Work from the works of others in his field, to provide a way for potential licensees to contact him for the purpose of purchasing licenses, as well as to ensure that anyone who merely views his Work appreciates that he owns all rights and title to it.

43.    Upon information and belief, one or more of the Defendants, or someone acting at their direction or on their behalf, intentionally removed, cropped-off, and/or obscured beyond

legibility, the facial CMI as well as the CMI in the metadata of the Work posted online, in violation of 17 U.S.C. § 1202(b).

44.     Upon information and belief, one or more of the Defendants, or someone acting at their direction or on their behalf, replaced Plaintiff's CMI with false CMI reading "Harrah's Cherokee Valley River Casino & Hotel" on the face of the infringing Work and with "*Copyright @ 2016 Virginia Beach Visitor Co. Guide Designed by VistaGraphic's, Inc. All rights reserved*" at the bottom of the website in violation of 17 U.S.C. §1202(a)(1).

45.     Upon information and belief, one or more of the Defendants, or someone acting at their direction or on their behalf, distributed copies and/or derivatives of the Work knowing that such facial and metadata CMI had been cropped-off or had been otherwise removed or obscured beyond legibility – and replaced with false CMI– all without authorization in violation of both 17 U.S.C. §1202(a)(2) and (b)(3).

46.     Upon information and belief, Defendants knew or had reasonable grounds to know that cropping-off or otherwise removing or obscuring beyond legibility Plaintiff's CMI from the Work – and replacing it with false CMI – would induce, enable, facilitate, and/or conceal infringements of Oppenheimer's copyright in violation of both 17 U.S.C. §1202(a) and (b).

47.     Oppenheimer therefore is entitled to statutory damages/penalties from Defendants of not less than $2,500, and not more than $25,000 for each act committed in violation of 17 U.S.C. §1202(a)(1), 17 U.S.C. §1202(a)(2), 17 U.S.C. §1202(b)(1), and/or 17 U.S.C. §1202(b)(2).

48.     Oppenheimer is also entitled to his Lodestar costs, including reasonable attorney's fees, pursuant to 17 U.S.C. §1203(b)(5).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. That Defendants, their agents, employees and/or servants be preliminarily and permanently enjoined from infringing Plaintiff's copyright in any manner whatsoever and from publishing through any visual media, and from selling, marketing or otherwise distributing any of his images, and from using his images in sales, marketing, and/or advertising;

B. That Defendants provide an accounting of all gains, profits and advantages derived by them because of the willful and unlawful acts of copyright infringement above described;

C. That Defendants be ordered to pay over to Plaintiff his actual damages sustained, in addition to all their profits attributable to the infringements, and which are not considered in computing Plaintiff's actual damages incurred as a result of Defendant's copyright infringements described herein, pursuant to 17 U.S.C. §504(b);

D. In the alternative, and at Plaintiff's election after verdict, that Defendants be ordered to pay maximum statutory damages in the amount $30,000 for each Work infringed pursuant to 17 U.S.C. § 504(c)(1), or, if the jury determines that Defendants recklessly or deliberately infringed, that Defendants be ordered to pay maximum statutory damages in the amount of $150,000 *for each* Work infringed pursuant to 17 U.S.C. §504(c), or such other amount as the jury may deem appropriate;

E. That in addition to the above, Defendants be ordered to pay over to Plaintiff's actual damages for each DMCA violation, plus all of Defendants' profits that are attributable to each such violation – which are not considered in computing Plaintiff's actual damages – pursuant to 17 U.S.C. §1203(c)(2);

F. That alternative to actual damages under the DMCA, and at Plaintiff's election after verdict, Defendants be: 1) ordered to pay to Plaintiff the maximum statutory damages

provided by 17 U.S.C. §1202 (a) (1) and (2), and by 17 U.S.C. §1203(c)(3)(B) for each violation; and  2) permanently enjoined and prohibited from employing, altering, cropping, obscuring, mutilating or otherwise utilizing Plaintiff's copyrighted images or their copyright management information in any manner or media whatsoever, pursuant to 17 U.S.C. § 1203(b)(1);

G.   That Defendants be ordered to pay to Plaintiff all his Lodestar costs including reasonable attorney's fees pursuant to 17 U.S.C. § 504(c) and §505 and 17 U.S.C. §1203(b)(5); *and*

H.   For such other and further relief as this court deems just and proper.

**<u>PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.</u>**

Date: February 11, 2022                    Respectfully submitted,

JOHN V. ROBINSON, P.C.

By:  /s/*John V. Robinson*_____
        John V. Robinson
        VSB No. 26247
        John V. Robinson, P.C.
        7102 Three Chopt Road
        Richmond, VA 23226
        Ofc: (804) 282-2987
        Email: jvr@jvrlawpc.com

DANA A. LEJUNE

By:      /s/*Dana A. LeJune*
        Dana A. LeJune
        Texas Bar #: 12188250
        Scott M. Francis
        Texas Bar #: 24088795
        1225 North Loop West
        Suite 825
        Houston, TX 77008
        Ofc. 713.942.9898
        Fax 713.942.9899
        dlejune@triallawyers.net
        scott@triallawyers.net

***Pro     Hac     Vice     Application
Forthcoming***

COUNSEL FOR PLAINTIFF,
DAVID OPPENHEIMER